# Exhibit 4

Westlaw

Page 1

Not Reported in F.Supp.2d, 2007 WL 765237 (W.D.Wis.)
**(Cite as: 2007 WL 765237 (W.D.Wis.))**

Only the Westlaw citation is currently available.

United States District Court,
W.D. Wisconsin.
CONSUMER PRODUCTS RESEARCH & DESIGN, INC., Plaintiff,
v.
Jimmy JENSEN, Ryan Jensen and Innotek Corporation, Defendants.
No. 06-C-625-S.

March 9, 2007.

Kendall D. Perkins, Attorney at Law, Sandy, UT, for Defendants.

MEMORANDUM AND ORDER

JOHN C. SHABAZ, District Judge.

**\*1** Plaintiff Consumer Products Research & Design, Inc. commenced this action against defendants Jimmy Jensen, Ryan Jensen, and Innotek Corporation alleging fraud, breach of contract, and unjust enrichment. Plaintiff seeks monetary relief and punitive damages in this action. Jurisdiction is based on 28 U.S.C. § 1332(a)(1). The matter is presently before the Court on defendants' motion to dismiss for lack of personal jurisdiction. The following facts are those most favorable to plaintiff.

BACKGROUND

Plaintiff Consumer Products Research & Design, Inc. is a Wisconsin corporation with its principal place of business in Janesville, Wisconsin. Defendants Jimmy Jensen and Ryan Jensen are both citizens of the State of Washington residing in Spokane, Washington. Defendant Innotek Corporation is a Washington corporation with its principal place of business in Spokane, Washington.

Defendant Innotek Corporation (hereinafter Innotek) is engaged in the business of (as is relevant to this action) manufacturing, marketing, and selling smoke detectors. Accordingly, defendant Innotek developed a line of radio frequency interconnected smoke detectors wherein each unit joins in an alarm when one unit detects smoke. Defendant Jimmy Jensen is involved with defendant Innotek's product research and development while defendant Ryan Jensen serves as defendant Innotek's president. Plaintiff is the assignee of United States Patent Number 6,229,449 (hereinafter the '449 patent) which covers a smoke detector system using wireless technology. One of the named inventors of the '449 patent is Mr. Richard Kirchner who serves as plaintiff's president.

In 2004, plaintiff and defendants entered into negotiations concerning a potential licensing agreement for the technology covered by the '449 patent. During negotiations, defendant Jimmy Jensen also faxed plaintiff correspondence regarding a confidential information disclosure agreement. Additionally, during negotiations an issue arose concerning who was to be identified as the licensee in the Agreement. On July 9, 2004 defendant Ryan Jensen sent plaintiff a "Letter of Intent" indicating that defendant Innotek would be the licensee. However, the Tanj Company (hereinafter Tanj) was subsequently identified in the Agreement as the licensee after both Jensen defendants urged plaintiff to change the designation. Additionally, both Jensen defendants assured plaintiff that Tanj was a viable company. Specifically, on or about July 16, 2004 defendant Jimmy Jensen represented to plaintiff by telephone that Tanj had experience in the technical and commercial development of hazardous detector apparatus.

On July 23, 2004 plaintiff executed a Confidential Disclosure Agreement whereby both Tanj and defendant Innotek would receive information concerning plaintiff's "business programs, products, applications, systems, components, technologies and business topics pertaining to 'Hazardous Condition Detectors and Wireless Communications.' " (Pl's. Br. Opp'n to Defs.' Mot. to Dismiss at Ex. E). Additionally, on July 28, 2004 plaintiff executed a Licence Agreement whereby Tanj (as licensee) acquired all rights under the '449 patent. Defendant Innotek is identified in the License Agreement as the sub-licensee. Defendant Jimmy Jensen executed both Agreements on behalf of Tanj and defendant Ryan Jensen executed both Agreements on behalf of defendant Innotek

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 765237 (W.D.Wis.)
**(Cite as: 2007 WL 765237 (W.D.Wis.))**

***2** After the parties executed the Agreements, defendants mailed several detectors branded with defendant Innotek's name to plaintiff in Wisconsin. Defendant Ryan Jensen then instructed Mr. Kirchner to modify the products to include the wireless technology covered by the '449 patent. Additionally, in October of 2004 defendant Ryan Jensen instructed Mr. Kirchner to bring the modified products to Chicago, Illinois for display at defendant Innotek's booth during a remodeling show.

In November of 2004, defendant Innotek paid for Mr. Kirchner to travel to its office in Spokane, Washington for a meeting concerning its use of plaintiff's wireless detector technology. Additionally, throughout 2004 and 2005 defendant Ryan Jensen corresponded with Mr. Kirchner by e-mail concerning issues such as: (1) potential infringement of the '449 patent, (2) locating investors for defendant Innotek; and (3) technical assistance.

### MEMORANDUM

Defendants assert there are no facts that support the exercise of general personal jurisdiction. Additionally, defendants assert they lack the minimum contacts with Wisconsin required to support the Court's exercise of specific personal jurisdiction. Accordingly, defendants argue they had no expectation of being haled into court in Wisconsin and as such their motion to dismiss for lack of personal jurisdiction should be granted.

Plaintiff asserts defendants come within the grasp of Wisconsin's long-arm statute because: (1) the Jensen defendants sent fraudulent representations into the State of Wisconsin, (2) defendants physically sent their products into the State of Wisconsin and instructed plaintiff to perform services under the License Agreement; and (3) defendants agreed to contract interpretation under Wisconsin law. Additionally, plaintiff asserts exercising specific personal jurisdiction over defendants does not offend traditional notions of fair play and substantial justice. Finally, plaintiff asserts defendant Innotek is subject to general personal jurisdiction because it has maintained continuous and systematic contacts with the State of Wisconsin. Accordingly, plaintiff argues defendants' motion to dismiss for lack of personal jurisdiction should be denied.

General personal jurisdiction is proper when a defendant has " 'continuous and systematic general business contacts' " with the forum which allows defendant to be amenable to suit within that forum regardless of the subject matter of the suit. *Steel Warehouse of Wis., Inc. v. Leach,* 154 F.3d 712, 714 (7th Cir.1998)(quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 416, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)). Specific jurisdiction refers to jurisdiction over a defendant in a suit arising from or related to defendant's contacts with the forum. *Id.* (citing *Helicopteros Nacionales de Colombia, S.A.,* at 414 n. 8). Plaintiff bears the burden of demonstrating that personal jurisdiction exists. *Mid-America Tablewares, Inc. v. Mogi Trading Co., Ltd.,* 100 F.3d 1353, 1359 (7th Cir.1996) (citations omitted). The Court will begin by addressing specific personal jurisdiction.

***3** In a diversity action, a federal district court has personal jurisdiction over a nonresident defendant "only if a court of the state in which it sits would have such jurisdiction." *Wilson v. Humphreys (Cayman) Ltd.,* 916 F.2d 1239, 1243 (7th Cir.1990), *cert. denied,* 499 U.S. 947, 111 S.Ct. 1415, 113 L.Ed.2d 468 (citation omitted). Under Wisconsin law, the jurisdictional question has two components. First, plaintiff must establish that defendants "come within the grasp of the Wisconsin long-arm statute." *Steel Warehouse of Wis., Inc.,* at 714 (citations omitted). If plaintiff is successful, the burden then shifts to defendants to demonstrate that exercising jurisdiction would violate due process. *Id.*

The only arguably applicable provision of the Wisconsin long-arm statute is Wis. Stat. § 801.05(5) which provides in relevant part as follows:

> **(5) Local services, goods or contracts.** In any action which:
>
> ... (b) Arises out of services actually performed for the plaintiff by the defendant within this state, or services actually performed for the defendant by the plaintiff within this state if such performance within this state was authorized or ratified by the defendant; or
>
> ... (d) Relates to goods, documents of title, or other things of value shipped from this state by the plaintiff to the defendant on the defendant's order or di-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

<pre>
</pre>
<pre/>

Not Reported in F.Supp.2d, 2007 WL 765237 (W.D.Wis.)
**(Cite as: 2007 WL 765237 (W.D.Wis.))**

rection ...

The Wisconsin Supreme Court has determined that its long-arm statute " 'is to be liberally construed in favor of the exercise of jurisdiction.' " *Mid-America Tablewares, Inc.,* at 1359 (quoting *Federated Rural Elec. Ins. Corp. v. Inland Power & Light Co.,* 18 F.3d 389, 391 (7th Cir.1994)). Additionally, the Wisconsin long-arm statute is " 'intended to provide for the exercise of jurisdiction over nonresident defendants to the full extent consistent with requisites of due process of law.' " *Id.* (quoting *Flambeau Plastics Corp. v. King Bee Mfg. Co.,* 24 Wis.2d 459, 464, 129 N.W.2d 237, 240 (1964).

There is no question that defendants come within the grasp of Wisconsin's long-arm statute. Defendants mailed several detectors branded with defendant Innotek's name to plaintiff in Wisconsin and defendant Ryan Jensen instructed Mr. Kirchner to modify such products to include the wireless technology covered by the '449 patent. Additionally, defendant Ryan Jensen instructed Mr. Kirchner to bring the modified products to Chicago, Illinois for display at defendant Innotek's booth during a remodeling show. As such, plaintiff performed services for defendants Ryan Jensen and Innotek within the State of Wisconsin upon authorization from said defendants. Accordingly, defendants Ryan Jensen and Innotek are subject to personal jurisdiction under Wis. Stat. § 801.05(5)(b).

Defendant Jimmy Jensen is likewise subject to personal jurisdiction under the Wisconsin long-arm statute. During negotiations, defendant Jimmy Jensen faxed plaintiff correspondence regarding a confidential information disclosure agreement. Defendant Jimmy Jensen subsequently executed a Confidential Disclosure Agreement on behalf of Tanj (a company that never existed) in which Tanj would receive information concerning plaintiff's "business programs, products, applications, systems, components, technologies and business topics pertaining to 'Hazardous Condition Detectors and Wireless Communications.' " (Pl's. Br. Opp 'n to Defs.' Mot. to Dismiss at Ex. E). Additionally Mr. Kirchner continually provided defendants with technical assistance and information concerning use of plaintiff's wireless detector technology. As such, plaintiff provided things of value to defendant Jimmy Jensen (such as confidential information concerning its wireless detector technology) from the State of Wisconsin. Plaintiff provided such information to defendant Jimmy Jensen under the terms of the Confidential Disclosure Agreement. Accordingly, defendant Jimmy Jensen is subject to personal jurisdiction under Wis. Stat. § 801.05(d).

**\*4** Having determined that defendants are properly subject to personal jurisdiction under the Wisconsin long-arm statute, it is necessary to consider whether the exercise of personal jurisdiction comports with the due process requirements of the Fourteenth Amendment. Due process requires that defendants must have certain minimum contacts with the forum "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)(quoting *Milliken v.. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940)).

This constitutional touchstone of minimum contacts requires that " 'defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.' " *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985)(quoting *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980)). Accordingly, it is essential that there be some act by which a defendant " 'purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' " *Id.* at 475, 105 S.Ct. at 2183 (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239-1240, 2 L.Ed.2d 1283 (1958)). This purposeful availment requirement ensures that "a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.' " *Id.* (citations and footnote omitted).

When defendants contacts with Wisconsin are considered in light of the foregoing standards, it is readily apparent that subjecting them to personal jurisdiction in Wisconsin comports with due process. Defendants entered into both a License Agreement and a Confidential Disclosure Agreement with plaintiff, a Wisconsin company. Additionally, defendants continuously sent e-mails, letters, and faxes to plaintiff in Wisconsin because of their negotiations and Agreements. Further, both Jensen defendants assured plain-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 765237 (W.D.Wis.)
**(Cite as: 2007 WL 765237 (W.D.Wis.))**

tiff by telephone that Tanj was a viable company a representation which appears to be false. Accordingly, when defendants contacts with the State of Wisconsin are viewed collectively they establish that all defendants possessed sufficient minimum contacts to sustain personal jurisdiction. *See Mid-America Tablewares, Inc.,* at 1361-1362.

Finally, the Court must determine whether exercising personal jurisdiction over defendants comports with the traditional notions of fair play and substantial justice. The Court finds that it does. When conducting a fair play and substantial justice analysis courts consider five factors which are as follows: (1) burden on defendants of having to litigate in the forum, (2) interests of the forum, (3) plaintiff's interest in obtaining relief, (4) interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) shared interests of the several states in furthering fundamental substantive policies. *Asahi Metal Indus. Co., Ltd. v. Superior Court of California,* 480 U.S. 102, 113, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92 (1987) (citation omitted).

**\*5** The most important factors to consider in the above mentioned analysis are: (1) interests of the states involved; and (2) the relative convenience of litigating in that forum. *Kohler Co. v. Kohler Int'l., Ltd.,* 196 F.Supp.2d 690, 700 (N.D.Ill.2002) (citations omitted). As it concerns the first factor, Wisconsin has a substantial interest in both preventing fraud from occurring in this State and in protecting its domestic corporations. Accordingly, the first factor supports the exercise of personal jurisdiction. Additionally, defendants bear the burden of presenting a "compelling case" that litigating in Wisconsin would be unreasonable. *Id.* Defendants failed to argue that it would be unduly burdensome for them to litigate in the State of Wisconsin. Accordingly, exercising personal jurisdiction over defendants comports with traditional notions of fair play and substantial justice and their motion to dismiss is denied.

### ORDER

IT IS ORDERED that defendants' motion to dismiss for lack of personal jurisdiction is DENIED.

W.D.Wis.,2007.
Consumer Products Research & Design, Inc. v. Jensen

Not Reported in F.Supp.2d, 2007 WL 765237 (W.D.Wis.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.